# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JOHN L. RODRIGUEZ,         :
                                   :
         Plaintiff,          :
                                   :
         v.                :     Civ. No. 16-240-LPS
                                   :
FRANCIS SCHANNE, et al.,    :
                                   :
         Defendants.     :

John L. Rodriguez, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

## MEMORANDUM OPINION

February 21, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff John L. Rodriguez ("Plaintiff"), an inmate at the James T. Vaughn Correctional

Center in Smyrna Delaware, filed this action pursuant to 42 U.S.C. § 1983 alleging negligence and

violations of his constitutional rights.[1]  (D.I. 3)  He appears *pro se* and has been granted leave to

proceed *in forma pauperis*.  (D.I. 5)  Plaintiff has filed a motion for leave to amend (D.I. 7), a motion

to supplement/amend (D.I. 10), and an amended complaint (D.I. 11).[2]  The motions (D.I. 7, 11) will

be denied as moot.  The first amended complaint (D.I. 11) is the operative pleading.  The Court

proceeds to review and screen the first amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(a).

## II.    BACKGROUND[3]

In 2010, Dr. Francis Schanne ("Dr. Schanne")[4] performed two testicular surgeries on

Plaintiff.  On October 18, 2015, Plaintiff was taken to Kent General Hospital for pain and severe

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]The Court construes D.I. 11, entitled "motion for leave to file an amended complaint/ supplemental complaint," as the first amended complaint.

[3]This Background takes as true the well-pleaded factual allegations in the first amended complaint, as the Court is required to do at this stage.

[4]Dr. Schanne was named as a defendant in the original complaint and is referenced in the first amended complaint. (*See* D.I. 3, 11) However, no relief is sought from Dr. Schanne in the first amended complaint. It appears, therefore, that Plaintiff has abandoned his claims against Dr. Schanne. To the extent Plaintiff intended to raise a medical malpractice claim or a § 1983 claim against Dr. Schanne, these claims fail for the reasons discussed in Section IV.A., and because Dr. Schanne is not a State actor. Dr. Schanne is a private physician who provided medical care to Plaintiff in 2010 but is not "clothed with the authority of state law." *Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d. Cir. 2004). Therefore, he will be dismissed as a defendant.

swelling of the left testicle. A urologist indicated that Plaintiff required a third surgery and provided a treatment plan for Defendants Delaware Department of Correction ("DOC") medical clinic ("DOC medical clinic") and its health care provider, Connections ("Connections"),[5] to follow. Plaintiff returned to the prison infirmary the same day. He alleges that the treatment plan "was quickly dismissed," and he was given "different non-effective medication" for his discomfort. (D.I. 11 ¶ 5)

Plaintiff was discharged from the infirmary on October 20, 2015; that same day he submitted a sick call slip requesting treatment for left testicular pain. Plaintiff was seen by nurse practitioner Defendant Cynthia Malee ("Malee"), who refused to provide Plaintiff with "better pain medication." (*Id.* at ¶ 8) On November 2, 2015, Plaintiff submitted a sick call slip, complaining of a severely swollen testicle, headaches, and eye irritation. He was sent to the medical clinic the next day, but he did not see a provider, and he was not examined for his condition and health concerns. The following day, November 3, 2015, he was seen by Defendant nurse Alyssa Silles ("Silles"), who informed Plaintiff that he would see a provider that week. (*Id.* at ¶ 11) Plaintiff was seen by Malee regarding his severe discomfort and other health concerns, but she refused to further examine him and informed him that, in December, he would see a specialist and have the surgery. (*Id.* at ¶ 12)

Plaintiff submitted a sick call slip on December 2, 2015, but he was not seen. The next day, he spoke to Emma ("Emma")[6] at the medical clinic and she advised him that his surgery had been approved. (*Id.* at ¶ 14) Plaintiff presented to the infirmary the next day and told nurse Weaver

---

[5]Connections is "Connections Community Support Programs."

[6]Paragraph 14 of the first amended complaint refers to Emma as a defendant, however, she is not described as a party and no relief is sought from her. The Court does not consider Emma to be a named party.

about his discomfort and health conditions.[7]  (*Id.* at ¶ 15)  Weaver scheduled an appointment for Plaintiff to be evaluated by a provider.  Plaintiff alleges that he was never seen.  On December 8, 2015, Plaintiff was sent to the infirmary for lab work and a psych evaluation and, on December 10, 2015, he discussed his lab work with Emma.  (*Id.* at ¶¶ 16, 17)  Plaintiff advised Emma of his severe discomfort and she prescribed Zocor,[8] but nothing was done for his discomfort.  (*Id.* at ¶ 17)  On December 11, 2015, when Plaintiff awakened with a severe headache and vomited, he was sent to the medical clinic for an evaluation.  (*Id.* at ¶ 18)  Defendant nurse Stephanie M. ("Stephanie") told Plaintiff he would have to submit three sick call slips to be evaluated by a provider.  (*Id.*)

Plaintiff submitted a sick call slip on December 30, 2015, complaining of testicular discomfort, chest pains, and breathing problems.  That night he was sent to the infirmary for chest pains and seen by Silles, who scheduled an appointment with the provider.  (*Id.* at ¶ 20)  Plaintiff complains that Silles did not perform an EKG, and he was never evaluated by a provider.  (*Id.*)  The next day, Plaintiff was seen by a psychiatrist and prescribed medication for depression.

Plaintiff's surgery was not performed by December 31, 2015 (despite Plaintiff having been told it would be done before the end of the year) and his condition worsened.  (*Id.* at ¶ 22)  When Plaintiff was at the infirmary on January 13, 2016, he explained to Stephanie that his condition and discomfort had worsened.  Stephanie stated that Plaintiff's medication would be refilled (it was not), but nothing else was done for his conditions.  (*Id.* at ¶¶ 24, 25)  Plaintiff submitted sick call slips on

---

[7]Paragraph 15 of the first amended complaint refers to Weaver as a defendant, however, she is not described as a party and no relief is sought from her.  The Court does not consider Weaver to be a named party.

[8]A statin used to treat cholesterol levels.  *See* http://www.webmd.com/drugs/2/drug-6040/zocor-oral/details (Sept. 28, 2016).

January 17 and 28 and February 7, 2016.  Plaintiff alleges that he was not seen following submission of the January 28th and February 7th sick call slips.  (*Id.* at ¶¶ 27-29)

The third surgery took place on February 25, 2016.  Plaintiff was told by the surgeon that his unexpected complications were the result of the two prior surgical procedures.  Plaintiff alleges that, following his surgery, Connections and DOC medical clinic did not follow the surgeon's treatment plan.  (*Id.* at ¶ 31)  Plaintiff was given different medication that did not help in reducing his pain.  He still experiences pain, pulling of the left testicle, and other health concerns.  Plaintiff was having suicidal thoughts and had constant discomfort.  (*Id.* at ¶ 32)

On February 29, 2016, Plaintiff was discharged from the prison infirmary and transferred to general population.  (*Id.* at ¶ 34)  On March 2, 2016, Plaintiff was advised that his pain medication prescription had expired.  He could not sleep and had extreme discomfort.  (*Id.* at ¶ 34)  After complaining, he was offered Tylenol.  (*Id.* at ¶ 35)  At some point that same day, a corrections officer called the infirmary and head nurse, John Doe, indicated that nothing could be done for Plaintiff except to prescribe Tylenol.  (*Id.* at ¶ 37)  Later that afternoon, Plaintiff was sent to the infirmary on an emergency visit and seen by provider Roxanne ("Roxanne"),[9] "who seemed not to care much."  Plaintiff was evaluated by someone else and given pain medication.  (*Id.* at ¶ 38)

Plaintiff was seen by his surgeon on March 23, 2016, and by Malee on March 30, 2016.  (*Id.* at ¶¶ 39, 41)  Plaintiff submitted a sick call slip on April 5, 2016, and was seen on April 7, 2016, with complaints of discomfort.  (*Id.* at ¶ 42, 43)  The head nurse "put in to see a provider," but he never saw one.  (*Id.* at ¶ 43)

---

[9]Paragraph 38 of the first amended complaint refers to Roxanne as a defendant, however, she is not described as a party and no relief is sought from her.  The Court does not consider Roxanne to be a named party.

Plaintiff alleges that he did not receive his pain medication on April 7 or 8, 2016. He was sent to the infirmary for treatment of his severe discomfort. He alleges that Defendant M. Gay ("Gay") refused to resume his medication and altered his dose but, "even after greatly expressing" his pain, Gay "seemed numb and show[ed] no concern." (*Id.* at ¶ 47) Plaintiff submitted another sick call slip on April 18, 2016, again complaining of testicular discomfort and burning pain, and submitted a second sick call slip for mental health. On April 20, 2016, he was seen by Stephanie who told him that she scheduled an appointment with a provider, but he never saw one. (*Id.* at ¶ 50) Plaintiff submitted another sick call slip for testicular discomfort on April 27, 2016. His April 27 and April 29, 2016 appointments were canceled. (*Id.* at ¶ 53)

Plaintiff continued to submit sick call slips in May 2016. A sick call slip was submitted on May 3, 2016, and Plaintiff was seen by Gay on May 4, 2016 in the infirmary on an "emergency visit," and alleges that she stated, "I see nothing wrong." Gay finally agreed to "put in" for Plaintiff to have an ultrasound, but it was never performed. Plaintiff's pain medication was reduced. He presented at the infirmary on May 13, 2016, but was not seen. He was thoroughly examined on May 14, 2016, was advised by medical personnel that he had nerve pain and possible nerve damage, and prescribed pain medication. (*Id.* at ¶ 59) He was seen on May 16, 2016 for heart palpitations and told it would be best if he was seen by a cardiologist. (*Id.* at ¶ 60) Plaintiff presented at the infirmary, and a nurse scheduled an appointment with a provider, but he never saw one. (*Id.* at ¶ 61) Plaintiff submitted a mental health slip on May 25, 2016 but was never seen, and then another sick call slip for testicular discomfort on May 30, 2016. (*Id.* at ¶¶ 63, 64)

Plaintiff experienced "a lot of pain" on June 7, 2016. The C/O's on duty called the infirmary to have Plaintiff evaluated but medical personnel refused to evaluate him, stating there were no nurses on duty. (*Id.* at ¶ 68) The C/O's called a code and Plaintiff was transported to the

5

infirmary. Upon his arrival, Defendant Robert B. ("Robert") stated there was nothing he could do for Plaintiff, at which point Plaintiff asked Robert to call the "on-call" physician, but Robert refused. (*Id.*) Robert stated, "there are no doctors on-call." Plaintiff was seen by nurse Patricia R. ("Patricia") when she came on duty and was scheduled for an appointment the following day.

The next day, Plaintiff was evaluated by Defendant Carla Cooper ("Cooper") who ordered a CT scan and a consult by a urologist. (*Id.* at ¶ 69) Plaintiff advised Cooper that Gay had previously ordered an ultrasound. Cooper explained that Gay had not ordered the ultrasound but had only considered one if Plaintiff's condition worsened. (*Id.*) Cooper increased his medication. The CT scan was performed on June 20, 2016; on June 22, 2016, Cooper provided Plaintiff the results of the scan and scheduled an ultrasound, which was performed on June 23, 2016. (*Id.* at ¶¶ 76-78) Cooper advised Plaintiff that no other urologist in Delaware wanted to treat him due to his extensive history. During the same visit, Plaintiff raised the issue of his housing assignment, and Cooper told him that the issue should be addressed with the DOC, and there was nothing she could do about it. (*Id.* at ¶ 77)

Plaintiff was seen by his urologist on June 29, 2016, who indicated that surgery was needed, but that he would not perform the surgery due to Plaintiff's extensive history and age. The urologist recommended better pain management and for the DOC medical clinic and Connections to provide Plaintiff special undergarments. (*Id.* at ¶ 81)

During the month of July 2016, Plaintiff submitted sick call slips for testicular discomfort, had some medical appointments canceled, and was seen on an emergency basis at 6:15 a.m. on July 13, 2016. (*Id.* at ¶¶ 83-87) At that time, he was advised that he would be seen that day and later told by a nurse that when the providers felt an inmate's sick call was not as important, they canceled medical appointments and bumped a few people depending on the severity of the patient's situation.

6

(*Id.* at ¶ 88) When he was called into the infirmary at 8:30 a.m., he was told by Jennifer ("Jennifer")[10] that he would not be seen because the providers were only working a half day, and he was sent back to his housing unit. (*Id.* at ¶ 89) At 1:30 p.m. on the same day, Plaintiff was sent to the infirmary for 23-hour observation after Defendant Lt. Stephon Boone ("Boone") had called the infirmary and demanded Plaintiff's immediate placement. (*Id.* at ¶ 90) Plaintiff was informed that he would be evaluated the next day by Defendant State Medical Director Herman Ellis ("Ellis"). (*Id.*)

Ellis evaluated Plaintiff and confirmed that he has chronic pain and testicular issues. Ellis told Plaintiff that they only have contracts with certain doctors, that he had contacted every urologist in the State of Delaware, and no one would accept Plaintiff. (*Id.* at ¶ 91) Plaintiff discussed his current housing situation with Ellis, who told Plaintiff he would see what he could do, but that the issue was in the discretion of the DOC. (*Id.*) Ellis increased Plaintiff's medication. Plaintiff was evaluated the next day by Monica Mills ("Mills"), who recommended Plaintiff see another doctor for a second opinion, "but [she] cannot find one." (*Id.* at ¶ 92) Mills told Plaintiff that Ellis had recommended a different housing assignment. Mills also recommended that Plaintiff seek an early release due to his medical condition.

On June 12, 2016, Plaintiff sent a letter to Boone regarding his current housing situation. Plaintiff alleges that his current housing assignment does not allow him to safely and properly attend his limited abilities in the capacity that best fits his testicular condition. (*Id.* at ¶ 70) Plaintiff requested a different housing assignment. (*Id.*) The next day, Plaintiff sent a letter to Defendant

---

[10]Paragraph 89 of the first amended complaint refers to Jennifer as a defendant, however, she is not described as a party and no relief is sought from her. The Court does not consider Jennifer as a party defendant.

Deputy Warden Scarborough ("Scarborough")[11] making the same request. A few days later, he submitted a sick call slip for a new housing assignment, complaining that his housing assignment was hazardous to his health and condition. On June 17, 2016, Plaintiff sent a letter to Internal Affairs seeking an investigation on his behalf regarding his treatment, neglect, and housing. On July 20, 2016, Plaintiff sent letters to Boone and Deputy Warden Scarborough requesting a move as recommended by Ellis. (*Id.* at ¶ 94) On July 22, 2016, Plaintiff was assaulted. He alleges the assault would not have happened if he had been transferred as he requested. (*Id.* at ¶ 95)

On May 25, 2016, Defendants Stacie Collins-Young ("Collins"), Penny Davis-Wipf ("Davis"), and Luann Don Paolino ("Paolino") denied his grievances. (*Id.* at ¶ 62) Plaintiff appealed to Defendant bureau chief Marc Richman ("Richman"). (*Id.* at ¶ 66) On June 17, 2016, Plaintiff was advised that he had not appealed his grievances. Plaintiff alleges that he submitted his appeals on June 3, 2016, via the grievance box. (*Id.* at ¶ 74) He then submitted grievances regarding the mishandling of his appeals. (*Id.* at ¶ 75) On June 23, 2016, Plaintiff submitted two grievances, one of which stated that he feared for his life due to the mishandling of his appeal. (*Id.* at ¶¶ 79, 80) Plaintiff submitted a grievance on July 18, 2016 for the cancellation of medical appointments. (*Id.* at ¶ 93) He submitted grievances on July 22 and 23, 2016, for failure to move him to a new housing assignment. (*Id.* at ¶¶ 96, 97) Defendants Laura L. Brackett ("Brackett"), Sharon R. Henderson ("Henderson"), and Kathleen Gleason ("Gleason") denied the grievances, and Richman denied the grievance appeals. (*Id.* at ¶¶ 98, 99)

The complaint contains nine claims for relief, as follows:

---

[11]Although he is not described as a defendant in the "Parties" section of the complaint, paragraph 94 of the first amended complaint refers to Scarborough as a defendant and relief is sought from him. Given the allegations raised against him and the fact that relief is sought from Scarborough, the Court considers Scarborough to be a party defendant.

(1) Claim 1 at ¶ 101 and Claim 2 at ¶ 102 against Malee, Connections, Gay, two John Does, and Cooper for (a) denying care, (b) interfering with treatment, and (c) failing to provide adequate medical care, treatment, evaluations and follow-up examinations, in violation of the Eighth Amendment;

(2) Claim 3 at ¶ 103 against Malee, Gay, Connections, and Ellis for medical malpractice under Delaware law;

(3) Claim 4 at ¶ 104 against Malee, Gay, Connections, Ellis, and DOC medical clinic for negligently failing to provide adequate treatment and failing to prevent further physical injury under Delaware law;

(4) Claim 5 at ¶ 105 against Stephanie, Silles, Robert, and two John Does alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment;

(5) Claim 6 at ¶ 106 against John Doe, Malee, Connections, DOC medical clinic, Robert, and Cooper for delay in medical treatment in violation of the Eighth Amendment;

(6) Claim 7 at ¶ 107 against Gleason, Jassa Grant-Major ("Grant"), Henderson, Bracket, Collins, Davis, Paolino, and Richman for denial of Plaintiff's grievances;

(7) Claim 8 at ¶ 108 against Connections and DOC medical clinic for deliberate indifference to serious medical needs, in violation of the Eighth Amendment; and

(8) Claim 9 at ¶ 109 against Connections, Cooper, Boone, and Scarborough for negligence under Delaware law for failure to provide facilities[12] compatible with Plaintiff's physical injury that meet civilized standards of decency.

---

[12]The Court construes "facilities" as referring to Plaintiff's housing assignment.

Plaintiff seeks compensatory damages.

## III.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of

28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma*

*pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental

defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  The

Court must accept all factual allegations in a complaint as true and take them in the light most

favorable to a pro se plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008);

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Because Plaintiff proceeds *pro se*, his pleading is liberally

construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989).  Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court

may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a

"clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson*

*v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d

Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to

give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to

§ 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule

12(b)(6) motions.  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ.

P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are

sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   DISCUSSION

### A.   Medical Malpractice

Claim 3 raises medical malpractice claims and Claim 4 raises medical negligence claims (construed by the Court as medical malpractice claims) against Malee, Gay, Connections, Ellis, and DOC medical clinic. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act, 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony, detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *See Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (citing *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)); 18 Del. C. § 6853. Because Plaintiff alleges medical negligence, he was required at the time he commenced this action to submit an affidavit of merit as to each defendant, signed by an expert witness. *See* 18 Del. C. § 6853(a)(1). Neither the initial complaint, nor the first amended complaint, were accompanied with an affidavit of merit as required by 18 Del. C. § 6853(a)(1).

Therefore, Claims 3 and 4 will be dismissed as non-compliant with Delaware law.

### B.   Eleventh Amendment

Plaintiff names the DOC medical clinic as a defendant. The DOC medical clinic falls under the umbrella of the DOC, an agency of the State of Delaware. The Eleventh Amendment protects states and their agencies and departments from suit in federal court. *See Pennhurst State School &*

12

*Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Delaware has not waived its immunity from suit in federal court – although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. Jan. 11, 2007). In addition, dismissal is proper because the DOC medical clinic is not a person for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989).

Accordingly, the Court will dismiss all claims against the DOC medical clinic pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2), as it is immune from suit.

## C.   Grievances

Claim 7 alleges that Gleason, Grant, Henderson, Bracket, Collins, Davis, Paolino, and Richman violated Plaintiff's constitutional rights when they denied his grievances at the initial stage and on appeal. The filing of prison grievances is a constitutionally protected activity. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. Nov. 7, 2006).

To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective  grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. Aug. 18, 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). In addition, the denial of a grievance appeal does not in itself give rise to a constitutional claim, as Plaintiff is free to bring a civil rights claim in District Court. *See Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. July 28, 2009) (citing *Flick*, 932 F.2d at 729). Plaintiff cannot maintain a

13

constitutional claim based on the fact that his grievances were denied at the initial stage and on appeal.

Therefore, the Court will dismiss Claim 7 against Gleason, Grant, Henderson, Bracket, Collins, Davis, Paolino, and Richman as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**D.      Housing**

Claim 9 is raised against Connections, Cooper, Boone, and Scarborough and alleges failure to place Plaintiff in housing that meets the needs of his physical condition.   It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment.   *See Olim v. Wakinekona*, 461 U.S. 238, 245, (1983); *Meachum v. Fano*, 427 U.S. 215 225 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and corresponding housing assignments]."); *Keeling v. Damiter*, 2011 WL 1984358 (M.D. Pa. Ma. 1, 2011). In addition, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose.   *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)).   The determination of Plaintiff's housing assignment is made by prison authorities as part of the administration of the prison.   *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("maintaining institutional security and preserving internal order and discipline" are central goals of prison administration).

Accordingly, to the extent Plaintiff alleges a right to a particular housing arrangement, the claim is not cognizable.   Therefore, the Court will dismiss Claim 9 against Connections, Cooper, Boone, and Scarborough as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V.   CONCLUSION

For the above reasons, the Court will:

(1) deny as moot the motions to amend (D.I. 7, 10);

(2) dismiss:      (a) Dr. Francis Schanne as a defendant, as the claims against him have been abandoned;

                    (b) DOC medical clinic as a defendant, as it immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2);

                    (c) Claims 3 (medical malpractice), 4 (medical negligence), 7 (grievances), and 9 (housing), and defendants Marc Richman, Penny Davis-Wipf, Jassa Grant-Major, Kathleen C. Gleason, Laura L. Brackett, Sharon R. Henderson, Herman Ellis, Luann Don Paolino, Stacie Collins-Young, Stephon Boone, and J. Scarborough, as the claims against them are legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1) and because Plaintiff failed to comply with the requisites of Delaware law.

Plaintiff may proceed on Claims 1, 2, 5, 6, and 8 against medical Defendants Connections, Cynthia Malee, John Doe(s), Carla Cooper, Stephanie M., Alyssa Silles, Robert B., and M. Gay.

An appropriate Order follows.